FOWLE *et al. v.* PARK *et al.*

(*Circuit Court, S. D. Ohio, W. D.* January 22, 1892.)

1. BREACH OF CONTRACT—SALE OF PATENT MEDICINE—DAMAGES.

Where one advertises and sells a proprietary article in a specified territory in violation of a contract the other party cannot recover as damages any moneys spent by him in advertising for the purpose of counteracting the effect thereof, since he might, in the first instance, have resorted to the courts for the protection of his rights.

2. SAME—ACCOUNTING.

In a suit for injunction and an accounting for violation of a contract not to sell a proprietary article in a specified territory, belonging to complainant, equity cannot decree an accounting for losses suffered by complainant by reason of reducing the price to meet defendant's competition. The accounting is limited to defendant's profits.

3. SAME—REMOTE DAMAGES.

Even if such damages were allowable generally, losses incurred by continued sales at the reduced prices after defendant had withdrawn from the territory would be too remote to merit consideration.

4. SAME—CALCULATION OF PROFITS.

Each party having manufactured the article for himself according to the same *formula,* the profits for which an accounting can be allowed must be computed upon the basis of the actual cost to defendant, and not to plaintiff, of making and selling the article; since the selling of nostrums of this character depends less upon intrinsic merits than the expedients used to recommend them to the public, which fact renders the cost of selling by one party no criterion of the cost to another.

5. SAME—INTEREST.

In an accounting for profits made by selling a proprietary medicine in a specified territory contrary to a contract, interest should be allowed, for though the liability is *ex delicto,* it arises upon a contract.

6. LACHES—EXCUSE.

One who knows that another is selling a proprietary article in a certain territory in violation of a contract between them, cannot justify a prolonged sleeping upon his rights on the ground that he has not sufficient knowledge of the details to bring suit, since he could bring suit by stating the facts generally according to his knowledge, and by means of interrogatories have a discovery of the details from the other party.

7. SAME—STATUTE OF LIMITATIONS.

The delay in bringing suit should only operate to reduce the time for which an accounting could be had to the time fixed by the state statute of limitations for actions on written contracts.

8. JUDICIAL NOTICE—SELLING NOSTRUMS.

The fact that the selling of proprietary medicines and nostrums depends less upon the merits of the medicines themselves than upon the expedients used to recommend them to the public is so notorious that the court will take judicial notice thereof.

9. BANKRUPTCY—EFFECT OF DISCHARGE.

A discharge in bankruptcy releases the bankrupt from liability for breach of a contract with a creditor who assented to the composition, although the creditor had no knowledge of the breach at the time of giving his assent.

10. SAME—PLEADING DISCHARGE.

A debtor who fails to plead his discharge in bankruptcy waives the benefit thereof.

In Equity. Bill by Seth A. Fowle and Horace S. Fowle against John D. Park, Ambro R. Park, and Godfrey F. Park for an injunction and accounting. The defendants filed an answer and a cross-bill for an injunction. Both the bill and cross-bill were originally dismissed by the circuit court. On appeal by complainant the decree was reversed. 9 Sup. Ct. Rep. 658. Subsequently a perpetual injunction was allowed against defendants, and the cause was referred to a master for an ac-

counting. The hearing is now on exceptions. to his report. Report modified.

*McGuffey & Morrill*, for complainants.

*O'Hara & Bryan* and *Paxton & Warrington*, for defendants.

SAGE, J. This cause is before the court upon exceptions to the report of the special master. The suit was to restrain the defendants from the violation of their agreement not to sell Wistar's Balsam of Wild Cherry within certain territory belonging to complainants, including that portion of the United States west of the Rocky Mountains. A decree was entered June 10, 1889, perpetually enjoining the defendants from selling said balsam or causing the same to be sold or manufactured within said territory, or within other territory embraced in the contract made by defendants with the complainants' assignors, and referring the case to a special master, to ascertain, take, state, and report to the court—

(1) An account of the sale of said balsam made, directly or indirectly, by the defendants, in violation of said contract or of the rights of the complainants in the premises.

(2) The gains, profits, and advantages which the defendants have received, or which have arisen or accrued to them, from the violation of the exclusive right of the complainants to sell said balsam in the territory prohibited to them.

(3) To assess the damages the complainants have suffered from such violation.

The complainants claimed before the master as the measure of their damages under paragraph 3, as stated above:

(1) The profits they could have made if they had enjoyed the monopoly of trade within the prohibited territory, guarantied them in said contract by defendants.

(2) The reduction of price necessitated by said violation of contract.

(3) The actual cost of extra advertising rendered necessary to counteract the injury to their trade by said violation of contract.

(4) Interest on each of the above items.

The defendants' claim before the master was that the true measure of damages was the amount of their profit on the balsam sold within the prohibited territory. They also presented a transcript of the record in bankruptcy, by which it appears that they filed their petition in bankruptcy, in the United States district court for this district, January 2, 1878, and that a composition was made with their creditors, which operated as a discharge from said date, and that complainants appeared among the creditors, and assented to said settlement.

In respect of discharge in bankruptcy the complainants said that at the time of said composition they had no knowledge of the violation of the contract, which is the basis of this action, and they were creditors of defendants, and gave their assent to the composition upon another and entirely different account.

The master finds that the net profits of defendants on sales made or authorized by them, or made with their knowledge, within the prohib-

ited territory, prior to January 2, 1878, (the date of the filing of the petition in bankruptcy,) were $1,154.84; and subsequent to January 2, 1878, $1,023.32; total, $2,178.16. The cost to complainants of the manufacture and sale of balsam was from $1.32 to $1.75 per dozen. The cost to the defendants was $2.63 per dozen. The sales by defendants before January 2, 1878, were 23 gross 5 7-12 dozen; after January 2, 1878, 20 gross 6¾ doz.; which amounts, deducted from the gross proceeds of defendants' sales, as stated in the report, show that the complainants' profit, on the defendants' sales, at the defendants' prices, would have been, prior to January 2, 1878, $1,439.58; subsequent to January 2, 1878, $1,243.36; being in all, $2,682.83.

The complainants further claimed before the master:

(1) Damages resulting from a reduction of price of the balsam in the prohibited territory made by them, and deemed necessary to counteract the injurious effects of the violation of the contract by the defendants. The master finds that said reduction of price upon sales actually made in the prohibited territory by the complainants from September 4, 1878, to October 23, 1889, amounts to $6,668, with interest amounting to $2,908.19.

(2) Extra advertising, considered necessary to protect their interest from the injurious effects of the violation of the contract, amounting to $1,024.47, with interest amounting to $238.

(3) Interest on the profits complainants would have made but for the violation of the contract, amounting to $1,799, of which $1,153.39 is upon sales prior to January 2, 1878, and $645.61 on sales after that date.

The master sums up his findings as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Complainants' profits | - | - | - | - | - | $2,682 83 | | |
| Interest - | - | - | - | - | - | 1,799 00 | | |
| | | | | | | | $ 4,481 83 | |
| Reduction of price - | - | - | - | - | - | 6,668 00 | | |
| Interest - | - | - | - | - | - | 2,908 19 | | |
| | | | | | | | 9,576 19 | |
| | | | | | | | | $14,058 02 |

Both parties except to the master's report. The complainants' exception is to the refusal of the master to allow the actual cost of advertising by them, rendered necessary, it is claimed, to counteract the injury to their trade by defendants' violation of the contract. The master refused to make this allowance, for the reason that the advertisements were under the caption "Caution," and were warnings to the public that there were counterfeits, and advising to buy the genuine, which might be known by the signature "I. Butts" on the wrapper. The master reported that that advertisement had reference to a spurious balsam, and called attention to the fact that it was nowhere charged that the balsam put upon the market by the defendants was spurious or counterfeit, and to the further fact that one of the complainants testified that he knew of no counterfeits in the market. The master found furthermore that all the

testimony, and the whole theory of complainants' case, assumed that the balsam of both complainants and defendants was compounded from the same formula, so that the logical effect of the "caution" would be to warn the public, not against the balsam prepared by the defendants, the curative property of which was identical with that of the balsam prepared by the complainants, but against some other balsam, different in its composition, and therefore presumably different in its effects, but which, in fact, had no existence. So that, although it may have been the purpose of complainants to warn the public against defendants' balsam, the "caution" advertisement did not do so in terms, and the defendants should not be charged with the miscarriage of complainants' purpose.

But, apart from this statement of reasons by the master, which is, logically, sound, the claim for the cost of advertising is inadmissible. If the complainants saw fit to resort to advertisements to counteract the defendants' wrong, they undoubtedly had the right to do so. That was a remedy of their own selection. They might instead have applied to a court of equity for an injunction to restrain the defendants from violating the negative covenants contained in their agreement with the complainants. In the unreported case of *Britting* v. *Decker Bros.*, (decided by the district court of Hamilton county, Ohio, January 5, 1881,) Judge AVERY, in speaking of the claim made for advertising, which was allowed by the master on the ground that it was necessary to counteract the defendant's advertisements, said:

"It is said by counsel that Decker Brothers were not to sit idly by and suffer their reputation to be lost without an effort to regain it. This may be true, but courts were open for actions for damages, or, if multiplicity of suits would be involved, for injunction. If they resorted to counter-advertisements, they might do so. But it is a different question whether, in a court of law, rules of damages would allow them to recover the expenses. If a man's property is invaded by a trespasser he may recover for the loss, but not for the expenses of building a wall to keep out the trespasser. The plaintiffs could have recovered for injury to their business, but not for counter-advertising, in which they saw fit to engage as a means of protecting themselves.

"It is said where injury has been done it is for the party injured to take reasonable care to prevent more serious consequences. That is a principle of law which is merely the application of the doctrine of ordinary care. Damages must be the proximate loss from the injury, and not aggravated by the omission of reasonable care of the party injured. But reasonable care does not require the owner of a trade-mark, injured by an advertisement in the newspapers, to resort to the newspapers to lessen his loss. There can, therefore, be no recovery for the cost of advertisements."

This is a correct statement of the law, and the claim for the expense of advertising was properly rejected.

The defendants' first exception is that the complainants are not entitled to an accounting, by reason of their long-continued acquiescence in the alleged violation of the contract in question, and their unreasonable delay in seeking relief. The testimony shows that the complainants, in a letter written to defendants under date August 20, 1878, stated that they had then indisputable evidence that the defendants' manufacture

of Wistar's Balsam was being sold on the Pacific coast market with defendants' knowledge and sanction, and an explanation was demanded. The complainants, in answer, say that they were not then in possession of details sufficient to enable them to bring a suit, and that it was only shortly before the bill was filed that they obtained such details. I do not think that the answer is sufficient. It was not necessary that they should have the details before bringing suit. If they were advised of the fact that the defendants were selling, they could have filed their bill stating the facts generally, and according to the knowledge they had, and have attached to the bill interrogatories which would have compelled the defendants to make full and complete discovery; and upon the decree for injunction and reference to a master the details would have been brought out. But, while ignorance of details was no excuse for not bringing the suit, the delay did not give to the complainants any right to continue their violation of a then subsisting and binding negative covenant.

My conclusion is that the delay operates only to limit the time embraced in the accounting, and that that should be fixed by the rule under the statute of limitations of Ohio, which, the liability arising by reason of the breach of a written contract, is 15 years. The bill was filed on the 28th day of March, 1884, which would carry the accounting back to the corresponding date of 1869. But this conclusion is subject to the next objection made by the defendants, to-wit, that on January 2, 1878, they filed their petition in bankruptcy in the United States district court for this district, and a composition was made with their creditors, which operated as a discharge from that date; and that complainants appeared among the creditors and assented to the composition. The complainants urge that the discharge is no bar, because they did not then know of the claim upon which this suit is based. I do not think that objection sound. If the debt was provable, it has been held that the action is barred, although it was not actually proved. *Hardy v. Carter*, 8 Humph. 153; *Rogers* v. *Insurance Co.*, 1 La. Ann. 161. But the defendants have not pleaded their discharge in bankruptcy, and that omission is fatal to the objection.

The defendants' exceptions to the master's assessment of damages present the following objections:

(1) To the finding that the complainants suffered damage resulting from their own reduction, in the invaded territory, of the price of the balsam, which reduction was forced upon them by the defendants' competition and cutting of prices, in the sum of $6,668, on which he allows $2,908.19 interest, making a total of $9,576.19. Complainants cite, as authority for this finding, *Yale Lock Co.* v. *Sargent*, 117 U. S. 552, 6 Sup. Ct. Rep. 934, where the supreme court sustained an award of damages for the enforced reduction of price of the locks which the complainant sold, caused by the infringement of the complainants' patent by the defendants. But counsel do not take into account that in a patent case, upon a decree for infringement, the complainant is entitled to the benefit of the statutory rule contained in section 4921, Rev. St.

U. S., that he may recover, in addition to the profits to be accounted for by the defendant, the damages he has sustained thereby. This cause is based upon a contract, and, the jurisdiction having attached to enjoin the breach of the defendants' negative covenant, the court may hold the case for the purpose of giving compensation or damages if the breach is incidental to the main relief. This is the settled rule, both in this country and in England. 1 Story, Eq. § 71; Bisp. Eq. § 487. The rule of compensation must be according to the settled principles of equity. It is well stated in Adams' Equity, *218, as follows:

"The grant of an injunction necessarily presupposes that the plaintiff has sustained a loss by the defendant's act, and that the defendant has probably derived a profit, which may or may not, according to the circumstances, be co-extensive with the plaintiff's loss. The strict right of the plaintiff, so far as the past wrong is concerned, is to recompense in damages for his own loss, irrespectively of the defendant's profit.

"A claim, however, for such damages would involve the necessity of proceeding in two courts at once,—in equity for an injunction, and at law for damages; and therefore the court of chancery, having jurisdiction for the purpose of the injunction, will prevent that circuity and expense; and, although it cannot decree damages for the plaintiff's loss, it will substitute an account of the defendant's profits."

*Crosley* v. *Gas Co.*, 3 Mylne & C. 428; *Colburn* v. *Simms*, 2 Hare, 543–560.

There is another objection to this finding by the master. He allows for the reduction of price complained of from September 4, 1878, to October 23, 1889. The bill was filed March 28, 1884, and the testimony shows that the defendants made no sales in the prohibited territory after the filing of the bill. The master finds, however, that the reduction subsequent to the filing of the bill was due solely to the defendants' prior unauthorized competition. The finding was not warranted by the testimony. It is true that witnesses state that such was the fact, but these statements do not warrant the conclusion reached by the master. The damages claimed and allowed upon that basis are altogether too remote and uncertain. I know no rule which would authorize the court to allow the subsequent reduction, even if damages could be awarded in this suit. The exception to this portion of the master's report will be sustained.

(2) The defendants object to the computation of the profits by the master, arrived at by substituting the cost to the complainants of making and selling the balsam for the cost to the defendants of the same items. This objection is well taken. The computation must be of the profits actually made by the defendants, and not of the profits which they might have made. It cannot be concluded with the certainty required by the law that the complainants could have made and sold the balsam at the figures they state. The cost of manufacturing could be stated accurately, but not the cost of selling, because that must depend largely upon the skill and efficiency of salesmen, and upon advertising. It is a fact so general and notorious that the court may properly take notice of it that the business of selling nostrums of the class to which

the medicine in this case belongs depends more upon the expedients employed to recommend them to the public than upon the merits of the medicine. The cost to one of manufacturing and selling is therefore no criterion by which to determine the cost to another.

(3) The defendants object to the allowance of interest. This objection will be overruled. The liability, although *ex delicto*, arises upon contract, and interest should be included. The record shows a deliberate and inexcusable violation by the defendants of their contract, and the court is not disposed to release them from any part of the liability which they have incurred. The decree will be in accordance with the master's report, as modified by this opinion. If counsel cannot agree upon the modifications, there will be a recommittal to the master to restate the account.