## MERRITT OIL CORPORATION v. YOUNG et al.

### No. 216.

Circuit Court of Appeals, Tenth Circuit.
Aug. 6, 1930.

John P. Akolt, of Denver, Colo. (Robert D. Hawley, of Denver, Colo., W. L. Walls, of Cheyenne, Wyo., and Smith, Brock, Akolt & Campbell, of Denver, Colo., on the brief), for appellant.

C. R. Ellery and Roderick N. Matson, both of Cheyenne, Wyo. (L. E. Armstrong, of Rawlins, Wyo., C. Leonard Smith, of Denver, Colo., and Mr. John Dillon, Clarence A. Swainson, and Carleton A. Lathrop, all of Cheyenne, Wyo., on the brief), for appellees.

Before LEWIS, COTTERAL, and Mc-DERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellees, by their second amended petition, allege that they are the owners of a two-thirds interest in (a) 800 acres of patented land, (b) a preferential oil and gas lease to 80 acres, and (c) an oil and gas prospector's permit to 1,880 acres, the title to which stands in the name of appellant. They pray for a decree adjudging them to be such owners, and requiring appellant to make appropriate conveyances or assignments. The trial court decreed relief substantially as prayed, subject however to the rights of appellant in and to an oil and gas lease originally executed to one Charles A. Mau, and assigned to appellant. This appeal is from that decree.

In November, 1914, the appellees, or their predecessors in interest, filed placer mining locations on 3,840 acres of the Public Domain in what later became the Big Muddy Oil Field of Wyoming. In May, 1915, an oil and gas lease was executed by these "original lo-

cators" to one Charles A. Mau, for a period of 99 years, Mau agreeing to develop or pay a rental. By assignment, Mau's rights under this lease later passed to appellant.

In 1915, one Humphreys and Whiteside became interested in the possibilities of this field, but were apprehensive of the validity of the locations made by the original locators. On July 9, 1915, a contract was entered into between Humphreys and Whiteside and the original locators of 2,760 acres of this land. This contract recites the locations; that the locators are desirous of having their locations validated and certain validating work done, and that Humphreys and Whiteside are willing to so validate the locations for a one-third interest therein. Humphreys and Whiteside thereupon agreed to sink certain test wells or validating holes; Humphreys and Whiteside were given the right to relocate in the names of themselves or associates, if they deemed relocation necessary to safeguard the interests of both parties. In case of such relocation, Humphreys and Whiteside agreed to "transfer or cause to be transferred by good and sufficient deed, an undivided two-thirds interest in and to said claims to the parties of the first part, in proportion and in like manner as the names now appear on the ground as staked. It being the purpose and intention of this agreement, that the parties of the first part to have an undivided two-thirds interest in said locations as they now appear of record, and the parties of the second part to an undivided one-third therein."

The agreement further recognized and agreed to preserve the rights of Mau in the oil and gas lease. Humphreys and Whiteside did relocate the 2,760 acres here involved, and on July 30, 1915, after such relocation, executed another agreement which confirmed the right of the original locators to a two-thirds interest in the relocations, as provided by the July 9th agreement.

Thereafter Humphreys and Whiteside transferred the relocations to the appellant, which took with full notice of the rights of the original locators. The appellant has at all times recognized the rights of the appellees to their proportion of the royalties under the Mau lease, but challenges their right to any further interest in the lands involved.

In their first amended petition, appellees prayed for an accounting for all oil and gas produced by appellant, for a receivership for the properties, and for other relief much broader in scope than now prayed for. In an answer to such petition, filed October 8, 1926, the appellant alleges that it has at all times been ready, and is now ready, to convey to the persons entitled, such interests as such persons may be entitled to receive under the contract of July 9, 1915, subject to the Mau lease, and offered to deliver into court, for the benefit of appellees, quitclaim deeds to such portions of two-thirds interests in the lands involved, but alleges that appellant does not know to what proportions appellees herein are entitled. A part of the prayer of that answer is:

"That the defendant, Merritt Oil Corporation, be directed by this Court to make, execute and deliver to the Clerk of this Court, for delivery by him to the persons, firms or corporations entitled to receive delivery thereof, good and sufficient conveyances to the persons, firms or corporations entitled thereto, in such portions as they are entitled to receive the same, of all interest in the land mentioned and described in paragraph IX of plaintiffs' amended petition, in no case or in no event, however, to exceed two-thirds interest in such land, subject, however, always, to the terms and conditions of the so-called Mau lease which have not already been performed as provided in the so-called Humphreys and Whiteside contract of date of July 9, 1915, and subject, always, to the terms and conditions of the last named contract and also subject, always, to the terms and conditions of the lease or leases, permit or permits when an assignment of a proportionate interest in any lease or permit is by the Court directed to be made within such reasonable time as the Court may direct."

The decree appealed from is substantially responsive to such prayer of appellant.

Since the appellees were concededly the original locators of the land involved; since Humphreys and Whiteside agreed in writing that, in event of relocation, they would transfer by good and sufficient deed an undivided two-thirds interest to the original locators; since it is plain that the plan was that Humphreys and Whiteside should have one-third, and no more, for their efforts; and since appellant stands in the shoes of Humphreys and Whiteside, it is entirely clear that, if appellant is to appropriate this two-thirds interest which rightfully belongs to appellees, some commanding reason for such appropriation must appear, or the decree must be affirmed. We take up, then, the reasons advanced by appellant.

1. Appellant contends that no trust was impressed upon the title acquired by Humphreys and Whiteside when the reloca-

tions were made by them in July, 1915; that the contract of July 9, 1915, imposed upon them only an obligation to transfer to appellees a two-thirds interest. The appellees contend that a trust attached to such relocations when made. The appellees are clearly right. Humphreys and Whiteside acquired their title by virtue of the original locations of appellees; the relocations were made "in order to further safeguard the respective interests" of appellees and Humphreys and Whiteside. Before the relocations, Humphreys and Whiteside had agreed in writing that, when and if title was acquired by relocation, they would transfer a two-thirds interest to appellees. The contract declared it to be the "purpose and intent of the agreement" that appellees were to have an undivided two-thirds interest in any such relocations. When a title is acquired by means of a promise to hold it for a specified purpose, such as to convey to another, a trust attaches upon the acquisition. Pomeroy's Spec. Perf. of Contracts (3d Ed.) 1926, § 144; 26 R. C. L. 1238; Peeler v. Lathrop (1 C. C. A.) 48 F. 780. In Moore v. Moore (9 C. C. A.) 121 F. 737, 739, public land was located in the name of the appellant; the trial court found the fact to be that the location had been made "for the joint use and benefit of both" appellant and appellee. It was held that such fact impressed the location with a trust.

2. Appellant contends that, in any event, no trust can attach to the title acquired. In the brief it is stated:

"The subject-matter of the 1915 contract no longer exists, and therefore it is impossible for the court to force the specific performance of that contract. The things which do now exist, which, it is true, in an indirect way grew out of the relocated claims, are not the subject-matter of the 1915 contract."

It appears that on September 5, 1916, the United States withdrew the lands herein involved from entry; and on February 25, 1920, the Oil Leasing Act was passed by Congress. 41 Stat. 437. During that period, work on the locations was progressing. Serious questions arose as to the rights of any one under these locations, as against the United States. So a compromise agreement was made as to the 2,760 acres involved, by which patent was issued to 800 acres, an oil and gas lease taken as to 80 acres, and an oil and gas prospecting permit taken as to 1,880 acres. Counsel for appellant, in their brief, state the situation:

"As a result of the withdrawal, however, only part of this land was finally patented under a compromise agreement made by the appellant and the government and the appellant was compelled to take an oil and gas lease and an oil and gas prospecting permit on the balance."

The claim now asserted by appellant comes to this: The 1915 contract contemplated a fee title eventuating in Humphreys and Whiteside, two-thirds of such title to belong to appellees. Because of circumstances over which neither party had control, Humphreys and Whiteside became possessed of fee title to only 800 acres, and a partial title to the balance. Therefore, appellant contends, the trustees absorbed the interests of their cestuis in such title as they did obtain. A mere statement of the contention answers it. No interest is more zealously guarded by courts of equity than that of a cestui que trust. To permit a trustee to oust his cestui because the title to the trust estate fails in part, and to thus enrich himself, is unthinkable. This court has spoken, in no uncertain terms, on this subject, in Skinner v. Cromwell, 40 F. (2d) 241, 244. There an oil and gas lease, held in trust, was conceived to be void and was canceled. A new lease, on the same property, was taken by the trustees in their own name, and approved by the Secretary of the Interior. The trustees claimed to own it personally, contending that the lease held by them as trustees no longer existed. This court held that "their trust relation was such they could not deal with the subject in their private interest without first reporting the facts to their cestuis que trustent and giving them an opportunity to take or waive whatever benefits might be gotten out of the situation." The court quoted with approval from 1 Perry on Trusts (5th Ed.) § 196, as follows:

"If among the assets of the trust estate there are leases, the trustee cannot renew them in his own name; and if he renews them in his own name, he must hold them by a constructive trust for the same persons beneficially interested in the old lease."

The record clearly shows, and counsel for appellant concedes, that the appellant acquired the title to these properties by a "compromise agreement made by the appellant and the government"; that is, by a surrender of its rights under the locations made in 1915. Mr. Justice Story laid down the governing principle when he said in Oliver et al. v. Piatt, 3 How. 333, 401, 11 L. Ed. 622, that:

"And if the trustee has invested the trust property, or its proceeds, in any other property into which it can be distinctly traced, the cestui que trust has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of the trust. * * * The option, in such case, to take the new or the original fund is, therefore, (as has been already suggested,) exclusively given to the cestui que trust, and is given to him for the wisest purposes and upon the soundest public policy. It is to aid in the maintenance of right and in the suppression of meditated wrong."

Oliver et al. v. Piatt was followed in United States v. Dunn, 268 U. S. 121, 132, 45 S. Ct. 451, 69 L. Ed. 876; in the latter case, the Supreme Court quoted with approval the principle laid down in Pennell v. Deffell, 4 DeGex, M. & G. 372, 388, as follows:

"It is an undoubted principle of this court that as between a cestui que trust and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruits of such property, whether it is in its original or its altered state, continues to be subject to or affected by the trust."

Appellant further contends that it is unfair to carry the trust, originally intended for located claims, over to an oil and gas lease and prospecting permit, with their attendant burdens. Appellant was not compelled to accept the lease and permit; it could have stood on its locations, and won or lost. When it accepted part in compromise of its claim for all, the rights of the cestui are not thereby divested; on the contrary, the trust attaches to the property received through such compromise. This contention of appellant is unfounded.

3. Appellant contends that by certain agreements, appellees have conveyed their rights to the fee title. There were three types of such instruments, but there is contention as to only one of them; as to that type, the appellant contends that the instrument conveys all rights to the land; the appellees contend, and the trial court held, that only the royalty interest was conveyed. The instrument recites the agreements of July 9th and July 30, 1915; recites that thereafter there had been executed to the grantor "a quitclaim deed of the royalty interest herein transferred"; that the grantor conveys to the grantee "all her right, title and interest in and to the royalty, oil and gas and any moneys which may be derived from the sale of the said royalty, oil and gas from the following described oil placer mining lands and claims, and also all her right, title and interest in said agreements with full right to enforce the same so far as the interest herein transferred is concerned, being an undivided one-sixteenth (1/16) of six and two-thirds (6 2/3) per cent interest in and to the following described oil placer mining lands and claims, to wit: (here description of property) being the royalty interest now owned by the said party of the first part under and by virtue of certain outstanding agreements."

That this instrument conveys only the royalty interest is clear. The Mau lease carried a 10 per cent. royalty; by the July 9th contract, the original locators reserved "two-thirds of said royalty" or 6 2/3 per cent. When the instrument in question conveyed the grantor's "right, title and interest in and to the royalty * * * being an undivided one-sixteenth (1/16) of six and two-thirds (6 2/3) per cent. interest," there is no room left for construction, or the application of rules designed to aid in the construction of ambiguous documents.

4. Appellant contends that the doctrine of laches bars any relief, and relies by analogy upon the statutes of Wyoming which provides that actions for the recovery of land must be brought within ten years. It is claimed that the relocations were made about July 15, 1915, and this action instituted December 31, 1925. There are many answers to this contention. In the first place, appellant, as the assignee of the oil and gas lease, was entitled to go on the premises; as the owner of a one-third interest in the fee, it was entitled to a joint possession. Again, "express trusts are not within the statute of limitations, because the possession of the trustee is presumed to be the possession of his cestui que trust. Prevost v. Gratz, 6 Wheat. 481, 497 [5 L. Ed. 311]; Lewis v. Hawkins, 23 Wall. 119, 126 [23 L. Ed. 113]; Railroad Co. v. Durant, 95 U. S. 576 [24 L. Ed. 391] * * * subject to this qualification: That time begins to run against a trust as soon as it is openly disavowed by the trustee insisting upon an adverse right and interest which is clearly and unequivocally made known to the cestui que trust; as when, for instance, such transactions take place between the trustee and the cestui que trust as would, in case of tenants in common, amount to an ouster of one of them by the other. Kane v. Bloodgood, 7 Johns. Ch. (N. Y.) 90, 124 [11 Am.

Dec. 417]; Robinson v. Hook [Fed. Cas. No. 11956] 4 Mason, 139, 152; Baker v. Whiting [Fed. Cas. No. 787] 3 Sum. 475, 486; Oliver v. Piatt, 3 How. 333, 411 [11 L. Ed. 622]." Speidel v. Henrici, 120 U. S. 377, 386, 7 S. Ct. 610, 611, 30 L. Ed. 718.

The record discloses that there was no disavowal of the rights of the appellees until after this action was commenced; on the contrary, the first answer filed by appellant admitted the rights of appellees. Furthermore, the trial court found, upon ample evidence, that through the years the appellant "sought delay in the matter of making the transfers upon the ground that it would be better to seek patent in the names of their locators and that as soon as this had been completed transfers would be made." Under such circumstances, the doctrine of Spiller v. St. Louis & S. F. R. Co. (8 C. C. A.) 14 F. (2d) 284, 288, is applicable:

"It is sound doctrine that, if a party interposing defenses of laches has been responsible for and substantially contributes to the delay, he is precluded from taking advantage thereof. 5 Pomeroy's Eq. Jurisprudence, § 35; Northern Pac. Ry. Co. et al. v. Boyd, 177 F. 804, 101 C. C. A. 18; Taylor v. Salt Creek Consol. Oil Co. et al. (C. C. A.) 285 F. 532."

The appellant, a trustee, acknowledged the rights of its cestuis for many years; when asked for transfers in accord with its agreement, appellees were put off with the statement that their contract protected them as well as deeds, and it would be better for all to let the matter rest for the present; even after this action was filed, tender of conveyance was made. There is no place here for the interposition of the equitable doctrine of laches.

■ 5. Other contentions are made by appellant which may be quickly disposed of. It is contended that it has spent large sums in development. It was stipulated at the trial that appellant was vested with all of the rights of the Mau lease. It was also an owner of one-third of the fee. It had a right to spend money in development, as such lessee and owner; but by such expenditures the title of its co-owners is not obliterated; an oil and gas lessee does not, by large expenditures, thereby acquire the fee. A contention is made as to waiver, which is somewhat obscure; but the record does not substantiate the claim. It is asserted that the decree makes the title chaotic; we do not see any chaos resulting from a decree requiring a trustee to convey title to its cestuis; any confusion results only from the number of cestuis, and the nature of the trust property. But a chaotic title is no justification for a court of equity decreeing that a trustee is the beneficial owner of trust property. It is contended that, since the title decreed to be conveyed is subject to the 99-year Mau lease, it is of no value to the appellees. This statement may well be questioned; but, if the title is without value, the appellant is not prejudiced by parting with it. Finally, it is broadly contended that the decree is inequitable. On the contrary, we think it is just and equitable.

■ 6. An additional defense is made as to the Consolidated Royalty Oil Company, to wit, that such company conveyed its interest to appellant by an instrument dated October 27, 1917. By that instrument the Consolidated Royalty Oil Company covenants that it is the owner of certain royalty interests in certain of the placer claims; the appellant agrees to pay the royalties to the Consolidated Royalty Oil Company upon certain terms. It recites that: "This agreement shall supersede all other agreements outstanding between the original party in interest to which the party of the second part is successor so far as the interests herein described are concerned, and shall operate as a cancellation and surrender thereof."

There is no word of conveyance or assignment in the instrument. It deals solely with the method of handling royalty payments. The quoted phrase, relied upon by appellant, is carefully limited by the clause "so far as the interests herein described are concerned." The contention that this agreement conveys any title to appellant is entirely without foundation.

The decree of the trial court requires appellant to live up to a written contract; it decrees to the appellees only that which is rightfully theirs. It should be, and is, in all respects, affirmed.