## GENERAL PETROLEUM CORPORATION OF CALIFORNIA v. DOUGHERTY et al.

### No. 9495.

Circuit Court of Appeals, Ninth Circuit.

Jan. 30, 1941.

530

A. L. Weil, Martin J. Weil, and Harris F. Shaw, all of Los Angeles, Cal., for appellant.

Theo. J. Roche, James Farraher, and Webster V. Clark, all of San Francisco, Cal., for appellees.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment rendered by the United States District Court for the Northern District of California, decreeing that appellees are the owners of certain specified overriding royalties and of certain impounded moneys accruing by reason of a certain contract made between Dougherty and one Washington H. Ochsner in relation to a United States oil and gas prospecting permit covering all of Sections 20, 22, and 26; the N½, the SW¼, the N½ of the SE¼ and the SW¼ of the SE¼ of Section 28, Township 22 South, Range 18 East, M. D. B. & M., issued to said Ochsner on April 16, 1921, by the Department of Interior of the United States of America. Said described premises form part of the territory now known as the Kettleman Hills oil land region.

This suit was originally filed in the state court but was removed to the Federal District Court on the ground of diversity of citizenship, the demand exceeding $3,000.

The judgment in the instant case was based upon an earlier final judgment recovered by appellee Dougherty, rendered in the state court of California in the case of Dougherty v. California Kettleman Oil Royalties, Inc., 9 Cal.2d 58, 69 P.2d 155.

Appellant had been a party to the proceedings in the state court, but by reason of it having pleaded that it had not any interest in the royalties involved in the suit other than to pay them to the party entitled thereto and that it was "ready and willing to pay the said overriding royalties, as and when the same may accrue, to whomsoever the court may find is entitled thereto," the case was dismissed as to appellant before trial. After Dougherty had been awarded judgment for the royalties in the state court, appellant refused to pay them over or account therefor, and appellees brought this suit.

A brief statement of appellant's claim will indicate its basic contention in its case before this court. Ochsner, through the effort of appellee Dougherty, had been awarded by the United States Government a permit and lease appertaining to certain prospective oil lands. Dougherty had contracted with Ochsner to secure for himself an overriding royalty of ten per cent, afterward reduced to five per cent. This contract, while reduced to writing, had not

been signed but had been fully complied with by Dougherty. The case of Dougherty v. California Kettleman, above cited, involved title to the royalties claimed by Dougherty by virtue of his contract with Ochsner. The permit and lease had been acquired by appellant subject to certain royalties retained by Ochsner. California Kettleman, by assignment from Ochsner, acquired paper title to the royalties in suit, but Dougherty alleged that these assignments were subject to his previous contract with Ochsner.

Appellant was a party to the suit in the state court and, as already stated, had there disavowed any interest in the royalties.

While the suit was pending, appellant entered into negotiations to join in a unit plan known as Kettleman North Dome Association (commonly referred to as "Kenda"). California Kettleman was opposed to this plan, and for the purpose of inducing it to consent to appellant's surrendering the permit to Kenda, appellant contracted to loan California Kettleman $1,000,000 if California Kettleman should recover judgment against Dougherty in the above pending litigation in the trial court. The trial court granted California Kettleman a judgment as to eighty per cent of the royalties, and appellant loaned it eighty per cent of $1,000,000, taking as security a pledge of all its "right, title, and interest" in the eighty per cent of the royalties. As a protection against a possible reversal of the judgment the loan agreement contained a covenant that in such event California Kettleman should immediately repay the loan.

The trial judge granted a new trial, and after protracted litigation Dougherty secured a final judgment decreeing him to be owner of the whole of the royalties.

Notwithstanding the fact that appellant had been a party to the original suit and that it had taken this pledge of the alleged interest of California Kettleman during the pendency of the action, it claims that the lien thereby created had priority over appellees' interest and that they are estopped to deny the same. Appellant has also set up certain statutes of limitation, which, it claims, bar appellees' recovery.

As stated in appellant's brief, "The facts with which we are concerned in this litigation are singularly free from controversy," and the following narrative of the transactions here involved is taken from the findings of the District Court.

After the passage by Congress of the Federal Oil Lands Leasing Act, approved February 25, 1920, 30 U.S.C.A. §§ 22, 48, 181 et seq., and on November 24th of that year, Ochsner and appellee Dougherty entered into an agreement whereby Dougherty agreed to find United States Government lands within the State of California open to the filing thereon of an application for an oil and gas prospecting permit, as provided in said Act.

On land selected by Dougherty, he was to apply for an oil and gas prospecting permit in the name of Ochsner and to secure the issuance thereof to him. As consideration for Dougherty's services it was agreed that he should be entitled to receive a one-tenth share of the balance remaining of the oil and gas produced and saved from the lands covered by the permit or any lease issued thereunder after deducting the royalty due the United States Government under said permit or lease and also deducting therefrom such portion of oil and gas actually consumed upon the lands as fuel or for lighting purposes in carrying out the operations authorized by the permit or lease. The agreement had been put in writing but had not been signed.

Dougherty performed his part of the agreement, which resulted in the issuance on April 16, 1921, of the prospecting permit first above described.

At the instance of Ochsner, Dougherty, in June, 1923, voluntarily reduced his agreed share to a five per cent overriding royalty of all the oil and gas produced and to be produced from the lands embraced within said permit.

On August 7, 1923, Ochsner assigned the prospecting permit to Coast Land Company, a corporation, reserving to himself an overriding royalty of 7½% of all the oil and gas produced from one-quarter of said lands designated as the "A" area and an overriding royalty of 2½% of all the oil and gas produced from the remaining portion of said lands, designated as the "B" area. Said assignment was approved by the Secretary of the Interior of the United States.

Digressing from the chronological order in the interest of clarity, we note here that the court below found: "Said reserved royalties being less than the five percent overriding royalty belonging to Dougherty under his said contract with said Ochsner, the said reserved royalties and all thereof

became and were the property of said plaintiff, F. C. Dougherty."

This was also the holding of the Supreme Court of the State of California in the case of Dougherty v. California Kettleman, etc., 9 Cal.2d 58, 69 P.2d 155. The court there said (at page 82 of 9 Cal.2d, at page 167 of 69 P.2d): "Under Dougherty's contract with Ochsner, the latter had the right to assign the permit except that he was bound to reserve and protect the percentage already assigned to Dougherty. The court has found, and such finding is supported by the record, as well as by reason and the law, that when Ochsner assigned the permit to the Coast Land Company reserving a percentage . that is mathematically less than the percentage he had already assigned to Dougherty, the percentage reserved was the property of Dougherty. This is the clear holding in Merritt Oil Corp. v. Young [10 Cir.] 43 F. (2d) 27."

In October, 1923, the Coast Land Company assigned all its title and interest in said permit to the General Petroleum Corporation subject to the reserved royalties. This corporation in May, 1926, transferred the permit to appellant General Petroleum Corporation of California, which assumed the obligation undertaken by the Coast Land Company in its agreement with Ochsner of August 7, 1923, including the obligation of paying the said overriding royalties described in said agreement as they accrue and which the Supreme Court of California determined were payable to appellee Dougherty.

In August, 1923, the said Ochsner, ignoring Dougherty's ownership of the said overriding royalties, assigned all of his right, title, and interest therein to Universal Oil Land Company, which said Universal Oil Land Company took with notice of the rights of Dougherty in and to said royalties.

It is admitted that thereafter, and on or about March 3, 1924, Dougherty notified General Petroleum Corporation, appellant's predecessor, in writing that he was the owner of said 5% royalty.

On or about November 21, 1924, appellee F. C. Dougherty filed in the Superior Court of the State of California, in and for the City and County of San Francisco, an action entitled F. C. Dougherty, Plaintiff, v. Washington Henry Ochsner, et al., Defendants, being that court's cause No. 152,-210, in which Dougherty sought to establish his ownership of said royalties. The complaint so filed appears to have been predicated upon a joint venture theory and asked for a one-half interest in all benefits, emoluments, and profits realized from operating, developing, selling, or subleasing the lands described in the permit.

On or about January 15, 1929, said Universal Oil Land Company transferred the naked legal title to said royalties to California Kettleman, which corporation took title with knowledge of Dougherty's claim. Thereafter plaintiff F. C. Dougherty amended his complaint in said action No. 152,210 and added said California Kettleman as a party thereto, and said corporation filed its answer in said action claiming to own . said overriding royalties free and clear of any claim of plaintiff Dougherty thereto.

Prior to the trial of said cause before Judge Walter Perry Johnson, and on or about March 10, 1931, defendant therein California Kettleman filed its cross-complaint, wherein it claimed title to and ownership of all of said royalties, to which Dougherty filed his answer praying that said defendant take nothing by its cross-complaint. In his answer Dougherty also set up his contract with W. H. Ochsner calling for the 10% royalty, and attached a copy thereof to the answer, and, further, alleged his reduction of his share thereof to said 5% overriding royalty and claimed ownership thereof.

On or about June 30, 1930, appellant herein filed in said Superior Court action of plaintiff Dougherty its answer therein with a cross-complaint in which it interpleaded all of the said reserved royalties, disavowed any interest therein and expressed its willingness to pay the royalties as they accrued to whosoever the court . should determine was entitled thereto.

On or about July 9, 1930, appellant herein filed in the Superior Court of the State of California, in and for the City and County of San Francisco, a complaint in interpleader bearing said court's No. 220,619, in which it set up the adverse claims of appellee Dougherty and said California Kettleman, and others, and sought leave of court to interplead said royalties. In said complaint in interpleader appellant herein again disavowed any claim to the ownership of said royalties and expressed its willingness to pay the said reserved royalties as and when they might accrue to whosoever the court might determine was entitled thereto.

On or about June 22, 1931, Dougherty filed in the said interpleader action of appellant an amended answer and cross-complaint again setting up his said contract for 10% royalty, attached a copy thereof to said pleading, and alleged his reduction of his said interest to a 5% overriding royalty and claimed ownership of said 5% royalty.

The trial of said cause No. 152,210 was commenced on or about March 25, 1931, before Judge Johnson, and following said trial, and on or about July 13, 1931, said judge rendered his decision against F. C. Dougherty and in favor of California Kettleman, in which decision he announced his intention of adjudging California Kettleman to be the owner of 6% of the overriding royalties of the "A" area of said permit, and 2% of the overriding royalties of the "B" area of said permit, which said royalties were a part of said overriding royalties reserved by said Ochsner in his said contract with said Coast Land Company.

Thereafter, and on or about July 15, 1931, appellant and California Kettleman, being unaware of the fact that Superior Judge Johnson had rendered a decision in said cause No. 152,210, entered into an agreement whereby appellant undertook to loan to said corporation a considerable sum of money in the event that said Judge Johnson should render a judgment in favor of said California Kettleman. The details leading up to, and the significance of, this contract will be noticed elsewhere in connection with the discussion of the Kenda agreement.

On or about August 29, 1931, the attorney for said California Kettleman approached appellant corporation and sought the payment to California Kettleman of the sum of $500,000 on account of said loan, in advance of the signing of the findings and judgment, upon the stated ground that if California Kettleman had that sum of money at that time he thought he could settle the conflicting claims to the royalties. Thereupon, and on August 29, 1931, appellant issued its certified check in the amount of $500,000 out of its Los Angeles office and transmitted the same to its San Francisco office for delivery to said attorney of said California Kettleman. Thereafter, and on or about September 2, 1931, appellant delivered the said check for $500,000 to the said attorney for said corporation, being induced to do so by the representation of said attorney that he thought he could settle the conflicting claims to the royalties with said money; and also by the fact that appellant would become obligated to pay said sum the moment the findings and judgment were signed. A few days before delivery of said check, the proposed findings of each of the parties to case No. 152,210 had been submitted to said Judge Johnson.

On or about October 23, 1931, the said Judge Johnson signed his findings of fact and conclusions of law in favor of said California Kettleman, in accordance with the decision theretofore rendered by him in said cause No. 152,210, and thereafter on November 17, 1931, signed his judgment in said cause based upon his said findings of fact and conclusions of law.

Under its said contract of July 15, 1931, with California Kettleman, upon the signing of said findings and judgment, appellant became obligated to loan to California Kettleman a sum in excess of $800,000.

After the findings of fact and conclusions of law and judgment in case No. 152,210 were signed by said judge and filed with said court, appellant paid over to California Kettleman the balance of said agreed loan in two payments of $150,000 each and on the respective dates of December 12, 1931, and December 29, 1931.

On November 25, 1931, plaintiff F. C. Dougherty filed notice of his intention to move for a new trial of said cause No. 152,210, and on or about January 15, 1932, the said Judge Johnson granted a new trial. Prior to the retrial of the case, Charles H. Shaw, who had filed a complaint in intervention therein, dismissed his said complaint in intervention, and the case 152,210 went to trial before Honorable John J. Van Nostrand, Judge of said Superior Court, with plaintiff F. C. Dougherty and defendant California Kettleman the only remaining parties thereto. During said trial and before plaintiff F. C. Dougherty rested his case therein, he moved the court for leave to file his third amended and supplemental complaint to conform to the proof, in which pleading he claimed all of the reserved overriding royalties. Said motion was granted by the court. Said amendment did not change plaintiff Dougherty's cause of action against California Kettleman from the cause of action contained in his previous pleadings in said cause.

Following said trial, judgment was rendered therein in favor of plaintiff F. C. Dougherty and against California Kettle-

man, whereby Dougherty was adjudged the owner of all of the royalties reserved by Ochsner in his contract with the Coast Land Company, to wit: the 7½% royalties on the "A" area of said permit and the 2½% royalties on the "B" area thereof, which said royalties include the royalties involved in this action, and in which judgment it was also adjudged that California Kettleman owned no interest whatsoever in said royalties or any part thereof and was not entitled to recover anything under its said cross-complaint.

California Kettleman appealed from said judgment, which in due course was affirmed by the Supreme Court of the State of California, on or about May 27, 1937·(9 Cal.2d 58, 69 P.2d 155), and said judgment became final on or about June 27, 1937.

Said Washington Henry Ochsner died on or about April 7, 1927, and his widow, Hilda Carling Ochsner, now Hilda Carling Hinckley, was duly appointed as administratrix of his estate, qualified as such, and ever since has been such administratrix. Prior to August 14, 1936, said Charles H. Shaw died, and one Edward E. Simpson became the duly appointed, qualified, and acting executor of his last will, and said executor with the consent of the court prior to August 14, 1936, assigned all of the claimed right, title, and interest of said Shaw and his said estate in and to said royalties to Hilda Carling Hinckley as such administratrix. Prior to said August 14, 1936, Nancy Baldy, named as a defendant in appellant's complaint in interpleader above referred to, assigned all of her claimed right, title, and interest to said royalties to said Hilda Carling Hinckley as such administratrix, and dismissed her said action, No. 206,415, filed by her in the Superior Court of the State of California in and for the City and County of San Francisco, which said action is described in appellant's said complaint in interpleader, above mentioned. Prior to said date, Frances H. Ochsner, one of the defendants in said complaint in interpleader, assigned all of her claimed right, title, and interest in and to said royalties to said Hilda Carling Hinckley as such administratrix.

Action No. C-123-J filed in the United States District Court in the Southern District of California, entitled Dorothy Dougherty v. Frank C. Dougherty, et al., was dismissed by said court on or about July 27, 1933, and the judgment of dismissal became final during the year 1934.

On or about August 14, 1936, while the appeal of California Kettleman was pending from the said judgment in favor of plaintiff F. C. Dougherty in said cause No. 152,210, said Hilda Carling Hinckley as administratrix of said estate of said Ochsner and as assignee of said Nancy Baldy, Frances H. Ochsner, and the estate of Charles H. Shaw, deceased, et al., entered into an agreement with California Kettleman, whereby it assigned to said administratrix the legal title to 40.697536% of said 7½% royalties of the "A" lands and 45.-259264% of said 2½% royalties of the "B" lands, which said assignment was subject to the said judgment of F. C. Dougherty in said cause 152,210 and subject to the result of the appeal from said judgment.

In this agreement said California Kettleman purported to retain the legal title to the remainder of said reserved royalties, to wit: 59.302464% of the said 7½% royalties of said "A" lands and 54.740736% of the said 2½% royalties of said "B" lands, and said parties to said agreement agreed with appellant herein by a contract in writing that the claimed right, title, and interest of said California Kettleman in and to said percentages of said royalties should stand as security for $575,000 of said loan theretofore made by defendant to said corporation as hereinabove described. In this agreement appellees had no part.

Thereafter, and on or about December 5, 1936, appellee Dougherty compromised the conflicting claims between him and the said Hilda Carling Hinckley as administratrix of said estate, and as assignee of said other claimants insofar only as regarded the said percentages of said reserved royalties, the legal title to which was assigned to said administratrix in the manner above set out.

On or about April 25, 1931, Kenda was formed with a membership comprised of the holders of permits and leases in the oil structure commonly known as the North Dome of Kettleman Hills. The lands covered by the said permit and the said leases hereinabove described are upon said oil structure and the greater portion thereof is included within the limits of the lands held by the members of said Association. Appellant herein became a member of said Association on or about the 25th day of April, 1931, and obligated itself to include the lands of the said permit and said leases in a plan of unit development for the entire structure and to accept from such As-

sociation, in lieu of defendant's independent development of the land of said permit, a share of all oil, gas, and other hydrocarbon substances produced by Kenda. Ever since its joining of the said Association appellant has received and accepted from said Association, in lieu of its own development of the lands of said permit, a share of the production which the aggregate acreage of the lands of said permit lying within the territorial limits of the Association bears to the entire acreage of the Association within said limits. And since the granting to plaintiff Dougherty a new trial in his said action No. 152,210, appellant herein has impounded pending first the final determination of the said cause No. 152,210, and after the judgment in said cause became final, pending the determination of this case, all of the royalties which have accrued under the said Kenda agreement with appellant herein, to the said · 59.-302464% of the said 7½% royalties on the "A" area of said permit and to the said 54.740736% of the said 2½% royalties on the said "B". lands of said permit. The District Court determined that appellees were entitled to these royalties by virtue of Dougherty's contract with Ochsner.

### As to the Loan Agreement.

 The evidence shows that Mr. Weil, appellant's only witness, had been connected with General Petroleum Corporation, the predecessor of appellant, from its organization, since 1916 as director, vice-president, and general counsel. After 1934, he was president of the appellant corporation. He was attorney for both of these corporations in the case of Dougherty v. Ochsner et al., No. 152,210. He it was who negotiated the loan agreement with California Kettleman, whereby, among other things, it was agreed that if California Kettleman obtained a judgment from the trial court in the Superior Court case, adjudicating it to be the owner of all the royalties, General Petroleum would lend it $1,-000,000, or if the trial court held that California Kettleman was the owner of something less than one hundred per cent, appellant would lend it a pro rata part of $1,000,000. As security, California Kettleman agreed to assign to General Petroleum "all of its rights, title and interest in and to the said Coast Land Company contract, and particularly the royalties therein provided in trust as security for the repayment of said loan." The agreement also contained provisions for foreclosure in the event of default. It also provided that California Kettleman should secure a permit from the Corporation Commissioner authorizing the assignment. This was obtained on July 30, 1931.

In his testimony Weil asserted that in entering upon this agreement he had in mind certain pleadings and representations of Dougherty, from which he concluded that Dougherty was not claiming all the royalties, and that he did, and was entitled to, rely upon these pleadings, statements, and conclusions, and that Dougherty was estopped from denying appellant's lien on these royalties to the extent of the amount advanced to California Kettleman.

What were these representations and statements which appellant now claims misled it to its damage? And was appellant entitled to rely thereon, and did it actually do so? In his original complaint filed in the Superior Court of the state on November 21, 1924, Dougherty alleged that by his contract with Ochsner he was entitled to one half the benefits accruing to Ochsner, and in all pleadings prepared by his attorney up to and including February 9, 1929, this position was maintained. Thereafter Dougherty engaged other counsel and filed amended pleadings, setting up his contract, which provided that he was to receive an overriding royalty of 10% of all the oil and gas produced from the land embraced within the permit, which share on June 7, 1923, at the request of Ochsner, was reduced to 5%, and in the prayer to the amended complaint Dougherty asked to be awarded this 5% overriding royalty. Here again, through miscalculation of counsel, at some place in the document it was stated that this 5% included two thirds of the 7½% royalty reserved by Ochsner on the "A" area and all of the 2½% reserved by Ochsner on the "B" area, although in the prayer and elsewhere the demand was for all the royalties. Appellant points out these changes and conflicting statements and insists that it was misled thereby in advancing a large sum of money on its agreement with California Kettleman, which corporation was contesting Dougherty's claim in its entirety. Under the loan agreement appellant was not obliged to advance any of this money before a judgment had been entered in the Superior Court in favor of California Kettleman. As a matter of fact, however, most of the money was advanced before any finding or judgment had been signed; appellant nevertheless claims that its lien should be given a priority over

Dougherty at least to the extent of one third of the 7½% royalties from the "A" area.

It is difficult to understand how Dougherty's alleged claim to a half interest in the royalties, made in 1924 but which in 1929 was changed to a claim for all the royalties, could have influenced appellant in making this loan agreement with California Kettleman in June, 1931. Obviously, this demand for a one-half interest based on a joint venture theory, which appeared in the original complaint and the first several amendments, as formulated by attorney Sweeney (and which were referred to at length in the case of Dougherty v. California Kettleman, etc., 9 Cal.2d 58, 72, 69 P.2d 155), could not have influenced appellant in making the loan agreement with California Kettleman because long before this Dougherty had caused amended pleadings to be filed, which were served on appellant and which clearly showed that he was basing his rights on the 5% amended contract.

In fact, Dougherty did not change his claim. In his first notice of March, 1924, to General Petroleum he clearly asserted it. He maintained it in his deposition in February, 1925. In a partial trial in 1925 he testified to it again. In his pleadings in the suit against California Kettleman, of date March 10, 1931, he set forth his contract with Ochsner, as well as in other pleadings; also, in the amended answer and amended complaint in the interpleader suit of appellant he pleaded his contract, which was read by appellant's attorney not later than July 13, 1931. And in the decision, which was to be a factor in determining the amount of the loan here in controversy, Judge Johnson said: "It is insisted * * that Dougherty is the only person entitled to any of the royalties accruing under the contract." Appellant was not without knowledge of Dougherty's claim.

These discrepancies occurring in his pleadings seem to be emphasized chiefly for the purpose of discrediting Dougherty, and with the idea of making it appear that his claim was so tenuous that it was not even clear in his own mind. Referring to these variations, appellant in its brief remarks that these are not the statements of a man claiming all the royalties, and asks if appellee and his attorneys could not determine the extent of his claim, how could appellant's representatives be expected to know. The errors, inadvertences, and mathematical uncertainties may indicate

some confusion among Dougherty's legal draftsmen, unschooled in the intricacies of oil production and finance. But from his own testimony appellant's representative Weil suffered from no such handicap. He appears to have been better advised than anyone else. In giving his evidence he indicates the existing reason for the very uncertainty which appears in the pleadings, particularly as to the several allegations in the same pleading, in one place to the effect that Dougherty's 5% overriding contract entitled him to all the royalties reserved by Ochsner, while elsewhere it might be suggested that this 5% did not cover all of the 7½% reserved on the "A" area. The following is an excerpt from Weil's testimony:

"Q. In your opinion would a royalty of 5% of the production upon the whole lease invariably be greater than the royalty of 7½ on the 'A' and 2½% on the 'B' lands? A. As long as the Kettleman North Dome continued in existence and the red lines were there, it would always be greater, but if the Kettleman North Dome should for any reason be terminated, in my opinion, if I might give an opinion, a lot of the 'B' lands would be thrown out as nonproductive and under those circumstances I think 5% of the total royalty on the 'A' and 'B' lands would be less than 7½ on the 'A' and 2½% on the 'B' lands, depending entirely on how productive the 'B' lands would be, and also contingent on the fact that the Kettleman North Dome agreement was dissolved."

In the state court much was sought to be made of this alleged shifting of position; after discussing the matter at length the Supreme Court of California determined that the appellant in that case took the assignment of the royalties pendente lite with knowledge of Dougherty's claim. The situation here is similar. That court also decided that Dougherty's contract for 5% overriding royalty comprised all that Ochsner reserved. That it does is admitted here.

As further strengthening its defense of estoppel, appellant claims that before advancing the first $500,000 on its loan agreement with California Kettleman their representative, Weil, inquired of Jerome White, at that time one of Dougherty's attorneys, about the extent of Dougherty's claim, and that on that occasion White told him they were going to amend their complaint and reduce their claim to 1% royalty

on the "A" lease and to ½% royalty on the "B" lease. White does not agree with this version of the conversation. He admitted that he talked with Weil over the telephone, but had "no·memory of Mr. Weil saying anything about the intention of General Petroleum making any loan to California Kettleman." White testified that on the day before this conversation he had written a letter to Judge Johnson, calling attention to some of the undisputed testimony in the case, according to which Ochsner admitted the value of Dougherty's service in the matter to be 1% and that there should be a finding giving Dougherty that much anyway. This was offered as an amendment to the findings proposed by the successful defendants. White testified:

"We never had any intention of abandoning the Dougherty litigation at that stage of the procedure, whatever Judge Johnson might do. It sometimes occurs that where a case is decided against a party, the party endeavors to get the best finding he can. * * *

* * *

"* * * I did not tell Mr. Weil that if Judge Johnson decided against us or gave us 1% that we were going to be satisfied and quit. * * *"

Again, White·testified: "* * * my answer to your question would be positively that nothing was said by me to Mr. Weil respecting Dougherty's intention not to move for a new trial and not to appeal and not to progress further with that litigation in the event the court would adopt the finding of fact which I proposed * * *."

White also said: "Mr. Dougherty was not present and did not participate in the conversation. I did not report any part of the conversation to Mr. Dougherty or obtain Mr. Dougherty's acquiescence to any part of the conversation. * * *."

On cross-examination witness Weil admitted that in a deposition given prior to the trial of the case at bar he testified, in effect, that he had paid over the money in question irrespective of anything attorney White may have said.

The evidence is convincing that appellant knew of Dougherty's contract and that he was predicating his rights thereon, also that Dougherty's five per cent claim covered all the royalties retained by Ochsner as the permit was being operated by appellant.

It further appears that in entering upon the loan agreement with California Kettleman appellant was not influenced to do so by any claims of Dougherty, inconsistent or otherwise, but that there was another compelling cause that induced appellant to act.

After the discovery of oil in the Kettleman Hills a method was conceived for developing that area on a so-called plan of unit development. As heretofore outlined, General Petroleum and the other operators, for their own advantage, formed the Kettleman North Dome Association (Kenda) and turned over to that association the right to operate their respective leases. Under its agreement with the association appellant received its acreage pro rata share of all the production of the association, whether produced from the Ochsner permit or from some other property. This was an advantageous agreement to the appellant.

Appellant's witness Weil testified that during the month of January, 1931, there was a lot of controversy with California Kettleman with respect to the Kenda agreement. California Kettleman was opposing appellant's joining that association and was threatening to get an injunction to prevent it. Appellant was eager to avoid litigation with California Kettleman, and because it had the paper title by assignment through Ochsner, was anxious to have its sanction of the Kenda agreement.

Witness Weil testified: "I knew that various claimants were contesting California Kettleman's rights to the royalties. These other claimants claimed that the legal title rested·in them. Whether the legal title passed to California Kettleman or not, I don't know, but that is how it appeared on its face, and I knew that numerous people were contesting California Kettleman's claim to those royalties."

On further cross-examination he answered:

"Question. It is a fact, is it not, that the principal reason why this loan was made to California Kettleman by the defendant in this case was for the purpose of bringing about and securing the signature of California Kettleman to the so-called Kenda agreement? Answer. We would not have loaned the money on any other basis.

"If it had not been for the desire of the defendant that California Kettleman hold the legal title to these royalties and sign this agreement, that loan would never have been made."

He also said: "* * * The real reason for entering into this agreement of July 15, 1931, was to bring about the approval of the so-called Kenda agreement by California Kettleman, in which name the legal title of these royalties stood. I knew that regardless of who actually owned the royalties the legal title thereto stood in the name of California Kettleman. * * *"

The circumstances surrounding the making of the loan agreement and the conduct of appellant in making advances on the loan all lead to the conclusion that the paramount consideration for this transaction was appellant's desire to protect its Kenda status.

Appellant's president admits that in entering into this agreement he was aware that the court might determine that some party other than California Kettleman was the owner of the royalties; also, that while agreeing to make payment on the entry of the judgment of the trial court, he well knew that any such judgment might be later changed, as did happen in the case.

He further admits that under the loan agreement appellant was not obligated or required to make any payments or loans until findings of fact and judgment had been rendered in the state court and that on September 2, 1931, when he turned the check for $500,000 over to Mr. Hatch, the attorney representing California Kettleman, the trial judge had signed no findings or judgment in the Dougherty case. He says that ordinarily he would not have done this; but Hatch had stated to him that if he would let him have this money, he was satisfied that he could effect a settlement of the case; and that as appellant was putting up the money principally to get these people with conflicting claims for the royalties all together, it was thought that Hatch could use the money to make a settlement.

The conclusion is irresistible that appellant advanced nothing on the strength or weakness of Dougherty's claims but that the inducement to the making of the loan agreement was to have California Kettleman ratify the Kenda plan. It was consummated without the consent of Dougherty and was of no benefit to him.

### Appellant Was a Pendente Lite Purchaser or Encumbrancer.

■ Appellees, on their part, contend that appellant being an encumbrancer pendente lite is bound in any event by the judgment rendered in the suit in the state court, and as supporting this contention cite Section 1908 of the Code of Civil Procedure of the State of California, as follows:

"§ 1908. Effect of a judgment upon rights in various cases.

* * *

"2. * * * the judgment * * * is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action * * * litigating for the same thing under the same title and in the same capacity, provided they have notice * * * of the pendency of the action or proceeding."

But appellant argues that Dougherty's third amended and supplemental complaint stated a new cause of action, different from that contained in the original and in the intervening complaints.

Appellant was at one time a party to the action in the state court. There it filed an answer and cross-complaint and interpleader, in which it disclaimed any interest in the royalties and stated "that this defendant is unable to determine the respective rights of the plaintiff and the said defendants [naming the other defendants] in and to said overriding royalties; that this defendant * * * is ready and willing to pay the said overriding royalties, as and when the same may accrue, to whomsoever the court may find is entitled thereto." After the filing of this document appellant was dismissed from the action. However, appellant was kept advised of the proceedings and was served with pleadings, even including plaintiff's last, third amended and supplemental answer; so in entering upon the loan agreement with California Kettleman it did so with full knowledge that these royalties were involved in a pending, undetermined suit. Further, appellant's president and attorney, who negotiated this loan agreement, admitted having read Dougherty's contract, which was the basis of his suit, at least three weeks before the agreement was entered into.

■ The courts of California have held that a pendente lite purchaser or encumbrancer is bound by the judgment, even in the face of the creation of new issues by later amendment, provided a new cause of action is not set up. Dobbins v. Economic Gas Co., 182 Cal. 616, 627, 189 P. 1073; 15 Cal.Jur. 195. Appellant insists that the

third amended and supplemental complaint changed the cause of action, but that contention is conclusively answered by the Supreme Court of California in the very case of Dougherty v. California Kettleman, etc., 9 Cal.2d 58, at page 86, 69 P.2d 155, at page 169, where the court said: "If no third amended and supplemental complaint had been filed, under sections 469 and 470 of the Code of Civil Procedure, the variance here charged would have been immaterial, for the reason that it is well settled that a mere difference in quantity of consideration between the pleading and proof is not a material variance. Gibson v. McReynolds, 175 Cal. 263, 165 P. 921; Peasley v. Hart, 65 Cal. 522, 4 P. 537; Howard v. D. W. Hobson Co., 38 Cal.App. 445, 176 P. 715. It has likewise been held, and for exactly the same reasons, that a mere change in the quantum of consideration to be paid under a contract does not constitute a change in the cause of action. Ford v. Ford, 44 Cal.App. 415, 186 P. 164; Sieck v. Hall, 139 Cal.App. 279, 34 P.2d 844. These cases, and many others that could be cited, clearly establish that under the circumstances here pertaining the granting of leave to amend rested in the sound discretion of the trial court, and that the amended complaint did not state a cause of action different from that contained in the earlier complaints. * * * As already stated, all of the complaints filed in the present action clearly and obviously refer to the same contract."

■ Even if we did not approve this sound reasoning we are required to follow the decisions of the California state courts. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 114 A.L.R. 1487; Six Companies v. Joint Highway Dist. No. 13, 61 S.Ct. 186, 85 L.Ed. ——.

### Appellant, a Trustee.

■ Appellant complains of the finding of the District Court that it was obligated to pay royalties from its allocated share of Kenda production.

Under the Kenda arrangement the members operated their holdings on a unit plan, whereby only selected portions of joint holdings would be placed under production, while other parts were permitted to remain inactive. The Association had the right to conduct drilling operations upon such parts of the structure as it believed could be profitably operated. Appellant admits that this arrangement was very advantageous to it.

After joining the Kenda appellant ceased to carry out its obligation to continuously operate the Ochsner leased lands, and between April, 1931, and some time in 1937 no well was drilled on these lands. However, appellant had received its pro rata share of the oil produced by Kenda based on its acreage in the Ochsner permit. In this connection witness Weil testified: "* * By the time the Kenda agreement went into effect the General Petroleum turned over to that Association possession of its permit, and assigned and transferred to the Association all equipment located upon the Ochsner permit, or that was usable in operating the property. It likewise turned over to the Association the right to drill the permit irrevocably, as long as the Association was in existence, so that after that agreement became effective the defendant in this case no longer was in a position where it could itself operate the permit. At that time defendant in this case had the obligations of the so-called Coast Land Company agreement which it had assumed. * * *"

■ Thus appellant itself made it impossible to develop oil upon the Permit lands in the manner contemplated under the Ochsner contract, and the royalties from that source were cut off, and there was substituted therefor the royalties allotted to appellant by Kenda based on the Permit area, in which appellees are entitled to their proportionate share. Where a trustee in violation of his trust has changed the trust property or its proceeds into other property, the cestui que trust has his option, either to hold the substituted property liable to the original trust, or to hold the trustee liable for breach of the trust. United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; Oliver et al. v. Piatt, 3 How. 333, 44 U.S. 333, 11 L.Ed. 622; Lathrop v. Bampton, 31 Cal. 17, 89 Am.Dec. 141. This right or option of the cestui que trust belongs exclusively to him, and it is not in the power of the trustee to deprive him of it.

The royalties involved in the litigation between Dougherty and California Kettleman et al., and to which appellant was a party, were these Kenda royalties, and therein appellant disavowed any interest in the royalties and stated that it had, and would continue to impound them until such time as the court would finally determine who was the owner thereof. As late as December 29, 1936, appellant, by Martin J.

Weil, wrote Dougherty: "In order to remove any doubt as to the period of time during which we will impound the royalties which both you and California Kettleman Oil Royalties, Inc. claim, we hereby inform you that we shall continue to impound such royalties until such time as it is finally determined who is entitled thereto." The District Court correctly held that by its course of conduct appellant had placed itself in the position of a trustee and as such is accountable for the royalties, and appellees prior to trial having ratified appellant's joining of Kenda, the court awarded appellees judgment for these royalties. The evidence and the law sustain this action. Merritt Oil Corp. v. Young, 10 Cir., 43 F. 2d 27; Dougherty v. California Kettleman, etc., 9 Cal.2d 58, 69 P.2d 155; Western Oil & Refining Co. v. Venago Oil Corp., 218 Cal. 733, 24 P.2d 971, 88 A.L.R. 1271.

*As to the Statute of Limitations.*

Finally, appellant invokes the statute of limitations.

We have heretofore decided that the appellant was holding these royalties in trust for the owner as should be determined by the court. In the suit in the state court of Dougherty v. California Kettleman et al. and in its own interpleader suit appellant specifically disclaimed any ownership or interest in these royalties and alleged that it held, and would continue to hold, them until the court decided to whom they were to be paid. It never amended its interpleader complaint, and the interpleader action was not dismissed until January 11, 1938, and this action was commenced on February 17, 1938. Time does not begin to run against a trust until it is openly disavowed by the trustee insisting upon an adverse right and interest which is clearly and unequivocally made known to the cestui que trust. Appellant secured its dismissal from the state case of Dougherty v. California Kettleman, etc., supra, by its own representation that it had no interest in the subject matter involved, other than that it was the holder of the royalties, and it there expressed its willingness to pay these over to the party determined to be entitled thereto by the judgment of the. court. Appellant continued to maintain this professed attitude of neutrality until after the judgment of the state court became final. Having taken this position during all the years of litigation, its plea based on the statute of limitations is not well taken.

On account of the length of this opinion a very few of the assignments of error, deemed less important, are not herein discussed, but they have all been carefully considered and are determined to be without merit.

The parties agree that in the event that appellees prevail herein the judgment in this action be modified to adjudge that appellees are entitled to all the royalties reserved by Ochsner during such time as the Permit lands herein are operated by Kenda. If Kenda ceases operation, appellees shall not receive in excess of 5% of the total production from both leases. Also by agreement of parties, the judgment is modified to eliminate the requirement that appellant must deliver to appellees royalties in kind at the option of appellees.

The judgment is amended to conform to the modification above agreed to, and as amended is affirmed.