**OLDLAND et al. v. GRAY et al.**

No. 3907.

United States Court of Appeals, Tenth Circuit.

Jan. 5, 1950.

Rehearing Denied Feb. 3, 1950.

Frank Delaney, Glenwood Springs, Colo., and C. J. Moynihan, Montrose, Colo. (L. H. Larwill, Denver, Colo., was with them on the brief), for appellants.

Jean S. Breitenstein, Denver, Colo. (Mitchell Benedict, Denver, Colo., was with him on brief), for appellees Nellie Ione Gray, Evelyn Levison and A. C. McLaughlin.

Frederic L. Kirgis, Denver, Colo. (Don Emery, Rayburn L. Foster, R. B. F. Hummer, George L. Sneed, Jr., Bartlesville, Okl. and Roscoe Walker, Jr., Denver, Colo., were with him on brief), for appellee Phillips Petroleum Company.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The appellants, referred to in the record and briefs as the Oldland Group, brought this suit in a Colorado State Court against the appellees, to establish their overriding royalty interest in an oil and gas lease owned and operated by the appellee Phillips Petroleum Company, by assignment from appellees Gray and Levison, who obtained it by quitclaim deed from appellee McLaughlin; and to impress a trust upon such royalty interest in the hands of Phillips.

In brief, the appellants claim that in 1926, they assigned their original prospecting permit on 1760 acres of public lands in Rio Blanco County, Colorado, to McLaughlin, on condition that he would fulfill the terms and conditions of the permit, and in the event leases were issued to the assignee as contemplated by the permit under the 1920 Leasing Act, 41 Stat. 437, 30 U.S.C.A. § 181 et seq., and production was obtained thereon, McLaughlin, as assignee, would pay to the Oldland Group, in addition to the royalties due the Government, a stipulated percentage of the market value of the oil and gas produced and saved from said leases; that in 1938, McLaughlin applied for a lease in exchange for the prospecting permit as contemplated by the 1935 Amendment to the Leasing Act, 49 Stat. 674, which was issued to him in 1939; that the appellees Gray and Levison took the leases by quitclaim deed from McLaughlin with knowledge of and subject to the conditions in the permit, and in 1943 applied for and received a renewal of the lease, which was thereafter assigned to the Phillips Company; that Phillips took the same with knowledge of and subject to the interest of the Oldland Group, and they are therefore entitled to a decree adjudging them to be the owners of the royalty interest provided in the 1926 assignment, and impressing a trust upon the production or the proceeds therefrom to the extent of their interest.

Service of process was made upon Phillips as a domesticated foreign corporation, and upon other non-resident defendants by personal service in the state of their domicile. More than thirty days after such service, but within the time allowed the defendants to plead by an order of the state court based upon a stipulation of the parties, the defendants filed their petition for removal, alleging that the federal court had original jurisdiction of the suit as one arising under the Constitution or laws of the United States, involving amounts in excess of $3,000, and as one between citizens of different states.

Appellants moved to remand, first, on the grounds that the suit had not been removed before the defendants were required by the laws of the state or the rule of the court to answer or plead to the complaint as provided by Section 72, Title 28 U.S.C.A.[1]; and on the further grounds that the action did not arise under the Constitution or laws of the United States, or was wholly between citizens of different states. The trial court overruled the motion to remand, and after an extensive trial, rendered judgment for the defendants, from which this appeal is taken.

The first question is of course whether the court acquired jurisdiction on removal. While there is a contrariety of views on the subject, the majority and we think the best reasoned view, is to the effect that an extension of time to plead by an order of court beyond a date when the pleadings would be due under a statute of the state or general rules of practice of the state courts, does not extend the time for applying for removal under Section 72, Title 28 U.S.C.A. See cases collected Annotation 108 A.L.R. 966.

Rule 12(a) of the Colorado Rules of Civil Procedure provides that a defendant shall file his answer within twenty days after the service of summons upon him, or if a copy of the complaint be not served with the summons, or if the summons be served without the state, then within thirty days after service thereof upon him. Rule 6(b) of the Colorado Rules of Civil Procedure provides, however, that when by the rules an act is required or allowed to be done at or within a specified time, the court may order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order. The order of the court extending the time within which the defendants might answer or plead in this case was undoubtedly entered pursuant to authority expressly granted to the court by Rule 6(b), and it does not derogate from the requirements of Rule 12(a). It was not entered upon the inherent power or authority of the court separate and apart from the Rule. It follows, we think, that

---

1. See 1948 Revised Judicial Code, 28 U.S. C.A. §§ 1446, 1447.

the petition for removal was filed within the time in which the appellees would be required to plead under the general rules of practice of the Colorado court, and was therefore timely under the federal statute as construed by the majority view.

The question remains whether by timely removal the court acquired jurisdiction over the subject matter as one arising out of the Constitution or laws of the United States, or between citizens of different states, involving the requisite amount in controversy.

The rights of the parties have their origin in the 1920 Leasing Act authorizing the original permit, and that Act, as subsequently amended in 1935 and 1942, 56 Stat. 726, undoubtedly has distinct relevancy in the adjudication of the stated claim. But, as we have often said, "A suit having for its purpose the enforcement of a right which finds its origin in the laws of the United States is not necessarily and for that reason alone one arising under such laws. * * * A right or immunity created by the laws of the United States must be an essential element of the plaintiff's cause of action, and the right or immunity must be such that it will be supported if one construction or effect is given to the laws of the United States and will be defeated if another construction or effect is given." Andersen v. Bingham & G. Ry. Co., 10 Cir., 169 F.2d 328, 329. See also Regents of N. M. College v. Albuquerque Broadcasting Co., 10 Cir., 158 F.2d 900; Skelly Oil Co. v. Phillips Petroleum Co., 10 Cir., 174 F.2d 89. Federal law did not create this asserted cause of action, nor is it an essential element thereof in the sense that the cause of action will be sustained if federal law is given one construction or effect, and defeated if given another. The asserted rights of the parties arise out of a private contract, and they must stand or fall upon its construction or effect. Cf. United States v. Ohio Oil Co., 10 Cir., 163 F.2d 633. We conclude that the court did not acquire jurisdiction over the case as one arising under the laws of the United States.

We are convinced, however, that jurisdiction of the court over the subject matter must be sustained on the independent ground of diversity of citizenship and requisite amount in controversy. Several of the plaintiffs and three of the defendants are citizens of the State of California, but there is complete diversity of citizenship between all of the plaintiffs and the defendant Phillips Petroleum Company, and it is argued that there is a separable controversy between the plaintiffs and that defendant. A removable separable controversy is one which can be fully adjudicated between parties of diverse citizenship, and as to which no other party is necessary or indispensable. Preston v. Kaw Pipe Line Co., 10 Cir., 128 F.2d 162; State of Oklahoma ex rel. Williams v. Neustadt, 10 Cir., 149 F.2d 143.

All of the defendants joined in a single petition for removal, and it was silent in respect to the existence of a separable controversy between plaintiffs and defendant Phillips Petroleum Company. A petition for removal based upon a separable controversy should give that as the ground. Goetz v. Interlake Steamship Co., D.C., 47 F.2d 753. But failure of the petition to do so is not fatal to the right of removal on that ground. In the absence of a charge that plaintiff acted in bad faith in prosecuting his suit upon a joint cause of action, i. e. see Updike v. West, 10 Cir., 172 F.2d 663, certiorari denied 337 U.S. 908, 69 S.Ct. 1050, the question whether a separable controversy exists within the purview of the removal statute is to be determined by reference to the complaint at the time of the filing of the petition for removal. Wecker v. National Enameling & Stamping Co., 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430, 9 Ann.Cas. 757; Preston v. Kaw Pipe Line Co., supra; State of Oklahoma ex rel. Williams v. Neustadt, supra.

Here, according to the complaint, appellant sought to establish their royalty interest as against all of the appellees who claimed adversely. As respects the ownership of the production from the lease, appellants sought a joint judgment against

all of the appellees deriving their title from a common source. But in addition to the joint relief sought against all of the appellees, the appellants by separate prayer, sought to impress a trust upon the production or its proceeds in the exclusive possession and control of Phillips, and to have Phillips declared to be the trustee of same. All of the appellees or their successors in title are alleged to have some royalty interest in the lease, but only Phillips owned the lease or controlled the interest sought to be charged with the trust. Only Phillips could be held accountable as trustee for the claimed interest of the appellants. As to that aspect of the suit, a separable controversy was presented between the appellants and Phillips, and removal of that controversy transferred the entire case to the federal court, to be judged in accordance with the substantive law of Colorado. See Preston v. Kaw Pipe Line Co., supra; State of Oklahoma ex rel. Williams v. Neustadt, supra.

Coming to the merits, the prospecting permit issued under the Leasing Act of 1920, supra, contemplated the issuance of a lease, conditioned upon the performance of certain covenants therein, including the duty to prospect for oil and gas by drilling specified wells. See Sections 13, 14 and 19 of the Act, 41 Stat. 441, 442, 445. The assignment to McLaughlin in 1926 recognized the obligations under the permit as a condition to its validity, and McLaughlin expressly covenanted and agreed "to carry on such drilling and operations on the said permit area as to fulfill the terms and conditions of the said permit within the period herein prescribed or any extensions thereof * * *". McLaughlin was given the right to terminate the agreement and discontinue all operations provided that upon abandonment, he would quitclaim all of his right, title and interest in the permit to the Oldland Group and pay them the sum of $2,000, if on the date of reassignment he had not complied with the drilling requirements of the permit. In the event the leases were issued to the assignee as provided by the permit and underlying legislation, McLaughlin agreed, in addition to the royalty due the Government, to pay to appellants "a royalty of 7½ per cent of the market value at the time produced, of oil produced and saved on the said lease embracing one-fourth of the permit area in which a Government royalty of 5 per cent is prescribed, and shall pay to the Oldland Group a royalty of 4 per cent of the market value of the oil produced and saved on the said lease embracing three-fourths of the permit area in which a graduated Government royalty is prescribed."

Although he did not drill the wells as contemplated, McLaughlin did keep the permits alive, always in the name of his assignors. When in 1938 he applied for an exchange lease under the 1935 Amendment, he acknowledged by affidavit the interest of the assignors in the permit and that such rights would be transferred to any lease granted. In his order of December 6, 1939 approving the assignment of the permit to McLaughlin, and the issuance of the lease to him in exchange therefor, the Commissioner of the Land Office expressly recited that the lease was granted "in lieu of the existing permit". The 1935 Amendment to the 1920 Act expressly authorized the holder of a valid prospecting permit to "exchange the same for a lease to the area described in the permit without proof of discovery, at a royalty of not less than 12½ per centum or value of the production * * *." i. e. see Amendment to Sections 13, 14 and 17, 49 Stat. 674–676. And, the amendment also provided that "Nothing contained [therein] shall be construed to affect the validity of oil and gas prospecting permits or leases previously issued under the authority of the said Act of February 25, 1920." Sec. 2(b), 49 Stat. 679. The exchange lease was granted on the basis of the valid permit, and when in 1940 McLaughlin quitclaimed the lease to his daughter Levison, and Gray, he again acknowledged his obligation to the Oldland Group under the terms of the permit, and Levison and Gray took the exchange lease with full knowledge of this outstanding obligation.

Before the expiration of the five year exchange lease, and in November 1943, Levison and Gray applied for a new lease

covering the same area, based upon the preference rights granted to them by the Amendment of July 29, 1942, 56 Stat. 726. The lease was granted with the active aid and assistance of Phillips on January 1, 1944, and it was subsequently assigned to Phillips, subject to a graduated overriding royalty of from $2\frac{1}{2}$ per cent to $4\frac{1}{3}$ per cent, which Phillips agreed to pay Levison and Gray in addition to the statutory Government royalty. Phillips took the assignment of the new lease with knowledge of McLaughlin's obligations under the original assignment of the underlying prospecting permit. The trial court so found, and its findings are supported by documentary evidence.

From these facts, the trial court first concluded that by its terms, the 1926 assignment created a fiducial relationship between McLaughlin, his heirs and assigns and the Oldland Group, which was not extinguished by subsequent assignments or legislation. On reconsideration, however, the court was of the view that the assignment did not create a fiducial relationship or raise a trust in favor of the assignors. We think its first impression was correct. Under the terms of the assignment, the Oldland Group retained no corporeal interest in the permit. Instead, McLaughlin became the owner, obligating himself, his heirs and assigns to keep the permit alive, or reassign the same. When and if production was obtained and the leases issued, he agreed to pay the Oldland Group a stipulated percentage of the oil produced.

They were not tenants in common, joint adventurers or mining partners. But fiducial relationships, universally recognized in equity jurisprudence, do not depend upon nomenclature. The doctrine extends "in all of its breadth and with all of its effects" to all persons who obtain legal title or possession of property in any manner so that he cannot equitably retain it against the rightful owner. In such circumstances, "equity carries out this theory of double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who

is considered in equity as the beneficial owner." Hayden v. Dannenberg, 42 Okl. 776, 143 P. 859, 860, see also Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077; Testerman v. Burt, 143 Okl. 220, 289 P. 315, 327; Probst v. Hughes, 266 P. 875, 69 A. L.R. 929; Trice v. Comstock, 8 Cir., 121 F. 620, 61 L.R.A. 176. Colorado courts have often embraced this concept of equity jurisprudence. Bowes v. Cannon, 50 Colo. 262, 116 P. 336; Walker v. Bruce, 44 Colo. 109, 97 P. 250; Bohm v. Bohm, 9 Colo. 100, 10 P. 790; Botkin v. Pyle, 91 Colo. 221, 14 P.2d 187.

Making application of this doctrine, it has been held that the assignment of an oil and gas lease reserving an overriding royalty, and providing that such reservation shall apply to all renewals, extensions and modifications, creates a trusteeship in the assignee, his successors and assigns for oil produced from a subsequent lease. Probst v. Hughes, supra. Similarly, it has been applied to the assignment of an oil and gas lease in consideration of an oil payment, with the provision that before relinquishing the lease, the assignee shall give the assignor thirty days' notice and on request reassign the same. In such circumstances a constructive trust has been raised, enforceable against the production of the oil from a lease obtained by the assignee after relinquishment of the original lease without the required notice to the assignor. Hivick v. Urschel, supra; Vol. 3 Summers, Oil and Gas, Perm.Ed., § 554, p. 320.

It is contended, and the trial court finally held, that even though a fiducial relationship was created by the 1926 assignment, it was extinguished by the 1935 Amendment to the Leasing Act providing for exchange leases and a minimum royalty of $12\frac{1}{2}$ per cent, or that it was certainly extinguished by the 1942 Amendment providing for new leases. It is clear, without doubt, that the 1935 Amendment did not extinguish the permit or abrogate the rights of the parties hereunder. Instead, it expressly recognized the permit and the rights of the parties. The new lease to Levison and Gray dated January 1, 1944, issued pursuant to the 1942

Amendment was captioned "lease of oil and gas lands under the Act of February 25, 1920, as amended". It expressly recited that it was made under and pursuant to the terms and provisions of that Act; its terms and conditions were not materially different than the exchange lease, and as we have seen, it was based upon the preference rights thereunder. It thus becomes plain that nothing in the 1935 or 1942 Amendments operated to extinguish the rights of the parties under the permit, and that they were preserved in all of their vitality in the leases on which oil was ultimately obtained by Phillips. See Arnow v. Bishop, 107 Mont. 317, 86 P.2d 644; Dougherty v. California Kettleman Oil Royalties, 9 Cal.2d 58, 69 P.2d 155; General Petroleum Corp. of Calif. v. Dougherty, 9 Cir., 117 F.2d 529.

But even though the subsequent legislation operated to extinguish the rights of the appellants as between them and the Government, it did not affect the rights of the parties under the private contract. As we have said, the rights of the parties here do not arise out of the federal act. They have their genesis in and derive their vitality from an agreement between the parties, which unless contrary to declared public policy, are enforceable in accordance with its terms and conditions and applicable law. See Blackner v. McDermott, 10 Cir., 176 F.2d 498. Viewed in that light, it becomes clear that the original agreement contemplated a continuing obligation on the part of McLaughlin, his heirs and assigns—an obligation to keep the permit alive by the observance of applicable federal law and the rules and regulations thereunder. It clearly contemplated the production of oil by McLaughlin or his assignees, and the payment to the appellants of a stipulated percentage of the royalty.

The parties now contend, and the trial court indicated, that to grant the relief sought by the appellants, the court must rewrite the contract. In that connection, it is pointed out that the permit contemplated 7½ per cent royalty on one-fourth of the permit area on which the royalty to the Government would be 5 per cent under Section 14 of the original Leasing Act, and 4 per cent royalty on three-fourths of the permit area on which the Government royalty was payable on a graduated scale, depending upon production. It is said that since the 1935 and 1942 Amendments provide for a minimum Government royalty of 12½ per cent, it is not within the equitable power of the court to fashion a decree which will give effect to the contract between the parties, and at the same time comply with federal law. But flexibility is one of the virtues of equity. Certainly equity will not be denied or hampered because of the imposition of intervening legislation. By their contract, the parties provided for royalty of 4 per cent to the appellants on leases or permits providing for a 12½ per cent Government royalty.

When McLaughlin applied for his exchange lease under the 1935 Amendment, he acknowledged his obligation to pay the original permittee 4 per cent on all oil produced under the lease. When in 1944 Phillips was negotiating for the acquisition of the lease, a Company representative expressed the view that there was an outstanding royalty of 4 per cent of the oil and 7½ per cent of the gas "reserved to the original permittees." Giving full force and effect, therefore, to the provisions of the 1935 and 1942 Amendments providing for a minimum Government royalty of 12½ per cent, as well as the understanding of the parties, especially the appellees, we hold that a trust relationship was created binding upon all parties in the chain of title; that such relationship was not extinguished by the 1935 or 1942 Amendments, and that in equity and good conscience, the appellants are entitled to an overriding royalty of 4 per cent of the oil and 7½ per cent of the gas produced, saved and sold from the leasehold estate, free and clear of cost, subject only to the Government royalty.

Nor is the claim barred by laches or limitations. Equity does not bar a claim of this kind unless it is equitable to do so. Time does not begin to run

against a trust until it is openly disavowed by the trustee. Merritt Oil Corp. v. Young, 10 Cir., 43 F.2d 27; Lawson v. Haynes, 10 Cir., 170 F.2d 741; Alexander v. Phillips Petroleum Co., 10 Cir., 130 F.2d 593. The appellees never denied that the appellants had an interest in the oil produced under the present lease until it was affirmatively asserted shortly before the institution of this suit. Indeed, the positive evidence is to the contrary.

The judgment is reversed.