The MIMI CORPORATION, Kirby Petroleum Co., and Holman Jenkens as Trustee for The Murchison Trusts, Appellants,

v.

V. W. HILL, individually; John M. Dickson, T. H. Hammett, and The Denver United States National Bank as Trustees of The Hill Foundation; and Richard Downing, individually, Appellees.

No. 6845.

United States Court of Appeals
Tenth Circuit.

Nov. 13, 1962.

---

Jay W. Tracey, Jr., and J. G. Holland, of Holland & Hart, Denver, Colo. (J. Harley Williams, Jr., Denver, Colo., and William M. Parks, Dallas, Tex., on the brief), for appellants.

Peter H. Holme, Jr., and A. Edgar Benton, of Holme, Roberts, More & Owen, Denver, Colo. (Joseph W. Morrisey, Jr., Denver, Colo., on the brief), for appellees.

Before PHILLIPS, PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff-appellants brought this action seeking a declaratory judgment to the effect that overriding royalties owned by the defendant-appellees were not payable out of production from an oil and gas lease issued to the plaintiffs under the preference provisions of the Act of July 29, 1942, ch. 534, 56 Stat. 726.[1] The plaintiffs, as owners of the lease, assert that the defendants' royalty interests were lost when the original lease expired, even though a preference lease was issued to them under the provisions of this Act. The plaintiffs also assert that all royalty payments made were the result of a mistake, and that they are entitled to an accounting for the amount paid. The trial court entered a summary judgment in favor of the defendants. The question presented by this appeal is whether a royalty reservation in an assignment of an oil and gas lease on federal lands extends to a preference lease issued to the assignee under the Act of July 29, 1942 when the assignment did not expressly provide that the royalty should apply to any lease other than the base lease.

On January 1, 1945, the United States leased the lands in question to Rose W. Roller for a period of five years. Thereafter Roller assigned the lease to V. W. Hill, reserving to herself a $\frac{1}{4}$ of $1\%$ overriding royalty in the production of oil and gas from the leased lands. The lease covering a portion of the lands was assigned to Bluebird Investment Company by Hill, who reserved an overriding royalty of $2\frac{1}{2}\%$ of the production which was to include the Roller royalty. The Hill assignment did not specifically provide that the $2\frac{1}{2}\%$ overriding royalty should be carried forward to a renewal or preference lease. By specific provision in this assignment, the assignee had the right to surrender the base lease without notice and without the consent or approval of the assignors. The plaintiffs are the successors in interest of Bluebird Investment Company, and the defendants are V. W. Hill, her assignees, the Trustees of the Hill Foundation, and Richard Downing, who is the successor in interest of Roller.

[1]. This statute provides in pertinent part:
" * * * That upon the expiration of the five-year term of any noncompetitive oil and gas lease issued pursuant to the provisions of the Act of August 21, 1935 (49 Stat. 674), amending the Act of February 25, 1920, and maintained in accordance with the applicable statutory requirements and regulations, the record title holder shall be entitled to a preference right over others to a new lease for the same land pursuant to the provisions of section 17 of the Act of February 25, 1920, as amended, and under such rules and regulations as are then in force, if he shall file an application therefor within ninety days prior to the date of the expiration of the lease. The preference right herein granted shall not apply to lands which on the date of the expiration of a lease are within the known geologic structure of a producing oil or gas field."

There was no production on the leased lands prior to the expiration of the term of the primary lease. Within 90 days prior to the expiration of that lease the plaintiffs filed an application for a preference lease pursuant to the Act of July 29, 1942. This application was rejected by local officials of the Bureau of Land Management at Cheyenne, Wyoming on the ground that the lands described in the application were included within the known geologic structure of a producing oil and gas field. This decision was reversed by the Bureau of Land Management, and the preference lease was issued to the plaintiffs on April 1, 1950.

Production was obtained from the leased lands, and the royalties referred to herein were paid for about nine years thereafter. In 1959 the plaintiffs, in reviewing the leases, concluded that the overriding royalties reserved under the provisions of the assignment did not extend beyond the base lease. They thereupon took appropriate steps to suspend payment of the royalties, and brought this action. In entering the summary judgment the trial court concluded that, although the preference lease was a new document, it could not be looked upon as an entirely different and new lease because it was founded upon the preference right attributable to the primary lease. The court held that the new lease was, therefore, a continuation of the primary lease, and, in the absence of an agreement or understanding to the contrary, the royalty interests reserved in the base lease carried over to the preference lease. This is the position of the defendants here.

The plaintiffs' argument that the defendants have no claim to a royalty interest is premised upon a theory that the preference lease is a new lease in every respect. The preference lease is an entirely different instrument from the base lease, and the statute and the regulations promulgated thereunder refer to it as a "new" lease. The plaintiffs contend that under these facts the rule established by

some decisions that an overriding royalty depends upon the continuation of the lease out of which it is carved, and does not survive a good-faith termination of that lease, is applicable. See Keese v. Continental Pipe Line Co., 5 Cir., 235 F.2d 386; La Laguna Ranch Co. v. Dodge, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 546; Annot., 135 A.L.R. 557 (1941); 3 Summers, Oil and Gas § 554, at 634 (Perm.Ed.1958). Typical of the pronouncement of this rule in the cases supporting it is the language of the court in Keese v. Continental Pipe Line Co., supra, at 388, where it is said:

> "We agree with appellees that this is so, and that, unless, as is not the case here, the instrument creating the overriding or royalty interest makes express provision to the contrary, the interest continues or ceases with the leasehold estate out of which it is carved and cannot survive termination by surrender or release of the leasehold estate by the owners."

We have found no decisions, and none have been cited, which have applied this rule in a case in which an existing lease was renewed or extended, or a new lease given to the holder thereof, pursuant to a right created by the provisions of the old lease. It is true that the owner of a noncompetitive lease on federal lands did not have an absolute right to a preference lease under the 1942 Act, because the land could be withdrawn from leasing, but another lease could not be issued to anyone else if the application was filed by the lease owner as required by the statute. Elwyn C. Hale, 62 I.D. 19; The International Trust Company, 60 I.D. 208; N. G. Morgan, 59 I.D. 400; Charles S. Hill, 59 I.D. 215; Hoffman, Oil and Gas Leasing on Federal Lands, 84, 86, 89, 90, 112 (1st Rev. 1957).

The plaintiffs acquired the new lease through a statutory right incorporated in the base lease in which the defendants had reserved their royalty interests. Without the assignment of this right the United States would not have issued the

preference lease to the plaintiffs.[2] We can perceive of no reason why these reserved royalty interests should not follow a new lease which was a direct outgrowth of the preference right of the owners of the primary lease in which the royalties were reserved. This exact question has not been decided directly, but we think Oldland v. Gray, 10 Cir., 179 F.2d 408, cert. denied 339 U.S. 948, 70 S.Ct. 803, 94 L.Ed. 1362, points the way to the trial court's decision. That case was tried on its merits, and it was held that, under the facts, a fiduciary relationship existed between the holders of the preference lease and the overriding royalty owners which required the former to preserve and recognize such royalty interests. In disposing of the contention that rights which were created by the assignment of a prospecting permit which evolved into a preference lease were extinguished by the 1942 amendment of the Mineral Lands Leasing Act,[3] we said:

"The new lease to Levison and Gray dated January 1, 1944, issued pursuant to the 1942 Amendment was captioned 'lease of oil and gas lands under the Act of February 25, 1920, as amended'. It is expressly recited that it was made under and pursuant to the terms and provisions of that Act; its terms and conditions were not materially different than the exchange lease, and as we have seen, it was based upon the preference rights thereunder. It thus becomes plain that nothing in the 1935 or 1942 Amendments operated to extinguish the rights of the parties under the permit, and that they were preserved in all of their vitality in the leases on which oil was ultimately obtained by Phillips. See Aronow v. Bishop, 107 Mont. 317, 86 P.2d 644; Dougherty v. California Kettleman Oil Royalties, 9

Cal.2d 58, 69 P.2d 155; General Petroleum Corp. of Calif. v. Dougherty, 9 Cir., 117 F.2d 529." Oldland v. Gray, 10 Cir., 179 F.2d 408, 414, cert. denied. 339 U.S. 948, 70 S.Ct. 803, 94 L.Ed. 1362.

See also Blackner v. McDermott, 10 Cir., 176 F.2d 498. We conclude that the royalty interests reserved in the assignment of the primary lease must be recognized by the owners of the preference lease.

Affirmed.

2. It is alleged in the complaint that "On November 29, 1949 plaintiffs made application for a new oil and gas lease, * * * under rights guaranteeing to the lessees a preference right to a new lease

upon the expiration of the primary term of the original lease * * *."

3. Act of Feb. 25, 1920, ch. 85, 41 Stat. 437, as amended, 30 U.S.C.A. §§ 22, 48, 49, 171, 181 et seq.